Good morning, Your Honor. Vince Branco, Federal Defenders, on behalf of Mr. Rojas. At Mr. Rojas' sentencing, the District Court directly questioned the prosecutor about the government's four-level fast-track departure recommendation. The prosecutor's answers to these questions indicated that it did not believe there would be sufficient deterrence and also indicated that the departure would be inconsistent with the guidelines, the DOJ guidance on these departures. All right, but what was the prosecutor supposed to do? The prosecutor said, I'm sticking with the deal, didn't, you know, so was the prosecutor supposed to lie to the judge? No, actually, I think the prosecutor should have told the truth, and the truth was that the four levels was consistent with DOJ guidance. Well, what should specifically the prosecutor, because your client had a prior, well, it was associated with a murder charge, went to prison, then he came back illegally a couple of times, right? Correct. So what good news should the prosecutor have said about your client? What facts should the prosecutor have said that you didn't say? The prosecutor should have said that even with this conviction, which is an accessory after a fact, it wasn't technically a violent offense, that nothing of the facts of this case... Well, he wasn't the shooter, but he was, was he the wheelman, or what was he? He was convicted of accessory after the fact. He was the driver of the vehicle, and at the sentencing hearing, it was fully discussed that he did not know what these two individuals were going to do. Those two other individuals... So it was like a drive-by, right? Without the person that's driving knowing that beforehand. Okay, well, that's so, but it's, you can't have a drive-by without a driver. I guess the point is, Your Honor, that this would not, under the DOJ's guidance, precluded Mr. Rojas from getting a four-level departure. Counsel, I don't think the judge said it would preclude him. The judge, as I read this thing, he looks like he's just exercising his discretion. I can't remember the new letters, but it used to be you could have an 11A1B or an 11A1C, and under the B, the deal was the prosecutor had to recommend something, but the judge didn't have to do it. Under the C, the prosecutor would recommend, and the judge either had to accept it, or the defendant could withdraw his plea, and it looks like you're trying to turn an 11A1B into an 11A1C. Prosecutor said our deal is for a four-level departure, and the judge just wasn't buying it, and I don't understand what the problem with that is. The problem is, and I want to direct the court to a specific question, and that's where the district court asked, if you've got anything that will help me decide whether this fast track is in line with your guidance, and that's where the prosecutor said, the best I think I'd be able to say at this point, Your Honor, is we're prepared to submit on our 24-month recommendation. The problem with this... Well, the guidance doesn't matter to the judge either. That's just guidance to the prosecutor. The prosecutor told the judge, here's our deal. I recommend four levels, and I'm sticking with it, even though it's obvious the judge doesn't like it. And as for the guidance, the judge doesn't have to follow the guidance. It's just like another recommendation that's not binding, and it's the recommendation not to the judge. The guidance is a recommendation to the prosecutor. What it is, is the attorney general telling the prosecutors, it's okay to ask for a four-level downward departure just to clear out your office's excessive load, even though it's not justified by what the guidelines say. I wish the government counsel would have said that, but he actually said something different in response, and that is he gave the negative implication that this wasn't required, that this was, that there was no reason that this was part of the guidance. Oh, now I see what you're saying. I didn't understand you to be saying that. I guess because I didn't understand the prosecutor to be implying that it was inconsistent with the guidance. That's because of the exact question the district court asked, which is, do you have anything that will help me decide whether or not this is part of the guidance? And that's where the prosecutor said nothing. And you have to go back a little bit, because the district court put this prosecutor in a difficult position. He initially said, the district court, that is, that you rubber stamp all of these prosecutions and give four levels regardless of the circumstances. It also said that... That is the guidance. Pardon? That is the guidance. In San Diego, you can give four levels, even though it's unjustified. I disagree with that. I think if you ask this opposing counsel right now, do they just rubber stamp four levels for all and don't look at the cold memorandum whatsoever, that he would say no. And he'd also say that, no, this actual recommendation of four levels in this particular case was consistent with the guidance. The fact is, there was nothing that precluded the district court for doing this, and that's what the district court was asking this prosecutor, and he failed to say anything. So you want to go back to a different judge, too, right? I mean, you don't want to vacate the plea, because if you were, if you had to plead open, what would your client face? He would face, actually, the court only gave one level downward departure in this case, so he would have been facing, I think, a guideline range of 30 to 36, and the client got 30 months here. Basically, he didn't get the benefit of the bargain in this case. No, no, no, no, no. If you asked to vacate the plea, if you said, but you want to enforce the plea agreement, essentially, and plus, then you wanted a bite out of the apple of another judge, right? Well, that's the remedy. Even though, what did the judge do wrong? What's the theory of why the judge? The judge doesn't do anything wrong in breach cases. It's the government, and it's because of the government. So why can't it go back, why couldn't it go back to the same judge? Because this court's case law says it's no reflection on the judge, but when there's a breach, you have, the remedy is specific performance before a different judge. And that's all we'd be asking for here. How did it comport? Since I was never a prosecutor, my own reaction would have been, when I was a district judge, what do I care about what this fellow Cole says the prosecutors ought to do? I'm the judge. I decide what the sentence is. But this judge evidently was more deferential to the prosecutor than I would have been, and he knew something about these Cole guidelines. And what I'm wondering is, how did this four-level departure comport with the guidelines, or it's not the guidelines, the guidance memo from Cole? How did it comport? It looks like this guy was too bad a criminal to really fit in the four-level downward departure scheme. Well, there's no disqualifying factors, meaning all of these factors are discretionary. I thought what the scheme was, I can't remember the exact criteria, but if it's a bad enough criminal, he doesn't get the four-level downward departure. Correct. It lists a couple disqualifying things, and one is a violent offense, but it lists things like murder, robbery, and this, again, is an accessory. This fellow had a violent offense. He had the drive-by shooting. Under this court's case law, an accessory after the fact is not a violent offense. Not after the fact when you're the driver. After the fact is when you subsequently manage to prevent apprehension. That is the California conviction that he was convicted of, is after the fact, meaning he didn't know what these people were going to do until they jumped back into the car after they murdered him. So he said. And that's what was proffered at the sentence. Do you want to save the balance of your time for. Yes, please. Okay. I please the court. Zach Howe on behalf of the United States. Look, can I ask you a question? So, you know, is it, is it, is it, this particular district court judges practice to inquire whether or not the government is abided by the Cole memorandum? I can't say for sure, your honor. I'm not aware. As Judge Kleinfeld was pointing out, I mean, the guidance memo from DOJ is for the prosecutors, right? That's correct. That's for you to decide whether or not you're going to offer a fast track. That's correct. Right. But I do think the district court recognized that here. I believe at page 18 and also 24 of the record, this is part of the sentencing hearing. The court ultimately says that I have discretion, regardless of the Cole memorandum, I have discretion unchained to that memorandum. So whether or not, you know, it was his role to, to, to sort of look over the prosecutor's shoulder and making the recommendation, did the, did the government present a united front in conjunction with the defendant in support of the, of the plea agreement? And if so, can you point to me how they did that? Certainly. How the prosecutor did that? So the prosecutor made the recommendation that it agreed to make in the plea agreement, both in writing and at the sentencing. It recommended a within guideline sentence and it factored in the four level departure into its guideline calculation. And it never said anything to contradict or undermine that recommendation. There were no inflammatory comments like the comments in Heredia or Whitney. Well, why wasn't it just a wink like Heredia says? Well, I think the reason is because if you look at cases like Johnson or Coleman from this court, the court has said that a grudging or unenthusiastic recommendation does not amount to a breach. In fact, in Johnson, the comments were virtually identical to the ones here. The prosecutor said, I am bound to make a low-end recommendation under the plea agreement and I'll comply. This court found no breach in that scenario. This case falls well within this court's Coleman decision because in that case, the prosecutor actually, in response to the court's inquiry, asked to withdraw his sentence recommendation that he was required to give under the plea agreement. And still this court held that there was no breach because however unenthusiastically or begrudgingly, the prosecutor acknowledged the recommendation he was required to give and made it by negative implication. So here, we're not talking about anything like that. The prosecutor didn't ask to withdraw his recommendation. He simply said, I'm bound by the plea agreement to make this recommendation. Did defense counsel object at any point in time? There was no objection. And I think that raises two issues. One is the waiver that's contained in the express terms of the plea agreement saying that unpreserved breach claims are waived on appeal. And the second is that even if you were to set aside that breach waiver, then you would still be on plain error review here. And so certainly under cases like Johnson or Coleman or Benchamal from the Supreme Court, any error here would not be clear or obvious. Well, what did defense counsel say to the judge as to why the four-level departure was appropriate? And did the prosecutor at any time say, well, that's not true or? So the defense counsel talked about the kind of mitigating circumstances of the accessory to murder charge, said that the defendant didn't actually know that the murder was going to take place. Did the prosecutor dispute that? Never disputed that. The defense counsel also noted the time period that had elapsed since the last illegal reentry. It was three or four years. The prosecutor never disputed that. I think the only claim here is that the prosecutor should have affirmatively taken actions to explain why he agreed with the fast-track recommendation. The problem with that argument is that the plea agreement nowhere requires an explanation for the recommendation. And under Benchamal from the Supreme Court, under Maldonado from this court, unless there is an express term requiring an explanation of the sentence, then the prosecutor doesn't have to give one. So I think those cases are dispositive on this issue. Well, if it went back, what could you say? I think the only thing that the prosecutor would say is this is consistent with fast-track. It allowed us to obtain a swift resolution of the case. Again, that wasn't required, but I think that's all the prosecutor would say here. And certainly, if we're looking at the prejudice inquiry, that would not plausibly have changed the court's mind. The court focused for nearly a... So in your view, does all the government have to say is, Your Honor, we stand, we just stand on the plea agreement. We adhere to the plea agreement. Is that sufficient? That's correct, Your Honor. That's exactly what happened in Johnson, and that's more than what happened in Coleman. So yes, that's correct. It doesn't have to be an enthusiastic recommendation. The prosecutor simply has to make the agreed recommendation of the sentence. And the final point I was making about prejudice is that the district court, for about a dozen and a half pages in the sentencing transcript, focuses on the three prior deportations, the court termed, I'll use its words, complicity in a gruesome, gruesome murder, the danger that Rojas poses, his gang affiliations. And based on all of that, the court said that a four-level departure was not appropriate because there was a need to protect the public, and there was a need to deter future... Well, is there anything that a prosecutor could have said on the convictions? Was there anything wrong said? No. I mean, let's say the judge made a misstatement about one of the convictions. Would the prosecutor have had a duty under this plea agreement to correct that? Not under the plea agreement. That might have arisen from a duty that the prosecutor has as an officer of the court. So I don't know that it would implicate this appeal, but it's possible that duty would have arisen from the officer to the court duty. But here, the court had all of the correct information before it. It simply interpreted that information differently because, again, fast track is a discretionary consideration, and the court simply did not think it was appropriate to exercise its discretion to give the full four-level departure. When the court expressed concern that it didn't appear that this recommendation fit within the fast track guidelines, didn't the prosecutor have an obligation to sort of say, Your Honor, it does? Here's why we think it does. No, Your Honor. I think this goes back to Benchamal and Maldonado, those cases that hold that unless there is an express term in the plea agreement requiring the prosecution to make that recommendation. But the judge put the prosecutor right on the spot. That's correct. But, again, if we look at, I think, Coleman, the court did put the prosecutor on the spot. He said, You're obligated to make this recommendation for a low-end sentence under the plea agreement, aren't you? Are you going to make that recommendation? And the prosecutor said, Yes, but actually I'd like to withdraw that recommendation because of this new stuff that I've learned. And still this court found no breach. So, again, unless there is a requirement for an explanation under the plea agreement, then the prosecutor doesn't have to give that explanation. I think you'd have a problem if the prosecutor said, Gee, Judge, I didn't think of that. I guess it doesn't fit the Cole memo advice. Then you'd have a real problem. I agree with that. I think here the prosecutor just said, Well, that's my recommendation. I'm sticking to it, didn't he? I agree completely with that. And I think that's probably what the judge was alluding to when he said- I don't think we're going to give you a decision that says, Oh, he could have backed off and said, Well, I guess it doesn't fit the Cole memo for whatever that's worth. Right. I think that would be very problematic. And when the court says, You know, if you just want to submit on the recommendation to avoid breaching the plea agreement, I think that's probably what the court had in mind is you may want to avoid saying anything to undermine the notion that this is consistent or that this is not consistent with- Well, if he hadn't gotten fast track in the first place, what was he looking at sentencing-wise? It would have been- I believe the top end of the guidelines range would have been 37 months, I want to say, maybe off by a month or two. With a one level fast track departure, the top end of the guidelines range was 33 months and that's what the court ultimately imposed. But he wants 24? He actually asked for 18. 18. So he would be out basically credit for time served or when would he be out? I don't know how long he has been in custody, but yeah, it wouldn't be much longer. So you concede that there's some problems with the supervised release? I concede that on Conditions 4, 7, and 8, those should be stricken. The one special condition of supervised release, it's kind of a tangential issue. Well, the one that says if you illegally come back, then you have to report? Right. Shouldn't that just go back as well? I mean, just say what you want? It certainly could. Much of that condition is already covered by the other conditions. Isn't it pretty simple? The judge is presumed to have advised on the standard conditions and any special conditions, he has to say it or it doesn't work. Isn't that the law? That's exactly right, Your Honor. And here, the court did say that one of the special conditions was not to illegally re-enter the United States and not to violate any laws. And then assuming that this guy is going to violate the law again, yet again, the judge says, but if you do, 72 hours to report. Right, and that is the only piece of that special condition. He didn't say that at the sentencing. That was added. That's right. That was added after. That's correct. When they put the judgment together. That's correct. And that's what the problem is. That's the only piece of the condition that would be problematic. That's correct. So our argument would be that that's simply putting meat on the bones of the condition. That was in the PSR. It's part of the standard conditions for reporting. I think the standard conditions assume that the person will not come back to the United States if he's reported forever, don't they? Well, that's correct. What I'm referring to is the standard condition that the defendant report within 72 hours to probation. That assumes that they would not be reported. Assumes that they're legally here. Right. So this is essentially just mapping on that condition to the special condition. But again, this is kind of a tangential issue. Most of that condition is already covered. It's so tangential. I couldn't figure out why you were briefing the case to save it. Fair enough, Your Honor. I mean, he's supposed to be out of here according to what the judge sentenced him to. Right. And so if he comes back, he's going to be in violation whether or not he reports. So if there are no other questions, then I'm happy to submit. Thank you. I'd like to make three quick points. First point is this district court from the start indicated that it was interested in hearing about whether or not to give a fast track departure and how much. The sentencing began with, I'm happy to hear from you. Or wait a second. Yeah, I'm happy to be persuaded that that's a wrong initial conclusion by you indicating defense counsel and Mr. Gutierrez, the prosecutor. So this court wanted to engage about whether or not to give it and what level. The other thing is I do believe there is an express term in this plea agreement that got invoked based on the district court question. When the district court was questioning whether or not this was in fact pursuant to the guidance. And on exit of record 53, the plea agreement does state the disposition contemplated by this agreement is pursuant to an early disposition fast track program authorized by the attorney general of the United States. Thus when the district court is saying, I don't think this is accordance to the, to the Cole memorandum, that guidance, the prosecutor did have an obligation to affirmatively state. Yes, it is. Finally, the government mentioned the Coleman case and where the, during the sentencing, the prosecutor tried to backtrack from the agreement. This court found in Coleman that they weren't going to find a breach because the district court there actually said, no, I understand your agreement and gave the defendant there the benefit of that agreement. With that I'll submit. Okay. Thank you. Well, with that, we, um, the rest of the cases on the calendar, Fitch versus Shaw Industries and Williams versus Warner Music Group are submitted on the briefs. Thank you counsel for your arguments in, uh, Rojas Martinez and that ends our session for today. All rise. Thank you.
judges: Kleinfeld, Paez, Callahan